# IN THE SUPREME COURT OF CALIFORNIA

In re JASMINE JENKINS

on Habeas Corpus.

S267391

Second Appellate District, Division One
B301638

Los Angeles County Superior Court
BA467828

---

March 27, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

---

In re JENKINS

S267391


Opinion of the Court by Guerrero, C. J.


After a jury found her guilty of voluntary manslaughter, Jasmine Jenkins appealed and filed a petition for writ of habeas corpus in the Court of Appeal. In the writ petition, she claimed the prosecution had suppressed evidence at trial in violation of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). Specifically, Jenkins alleged the People had suppressed evidence that the victim and a key witness had previously been prosecuted for aggravated assault arising from an incident that occurred 12 years earlier, which Jenkins asserted would have supported her claim of self-defense. To support her allegations, Jenkins attached as an exhibit an appellate court opinion downloaded from LexisNexis that apparently referred to the prior prosecution.

The Attorney General filed an informal response and, after the Court of Appeal issued an order to show cause, submitted a brief in support of his return, arguing Jenkins had failed to present sufficient evidence of the prior case forming the basis of her *Brady* claim. In particular, the Attorney General argued that the appellate opinion was "nothing but an apparent printout of an unspecified and unverified Internet source."

The Court of Appeal assumed the opinion from the prior case referred to the victim and the witness, but it concluded the evidence of prior prosecution was not material under *Brady* and denied Jenkins's petition for writ of habeas corpus.

Jenkins filed a petition for review in which she contended that it was appropriate to grant review because the Attorney General had violated her right to due process by suppressing the same evidence that formed the basis of her *Brady* claim. The Attorney General filed an answer stating he had no "obligation to provide additional evidence" pertaining to Jenkins's petition for writ of habeas corpus. Specifically, the Attorney General maintained he had no constitutional, ethical, or procedural duty to disclose evidence of the alleged prior prosecution in response to Jenkins's petition. We granted Jenkins's petition for review on the limited issue of the Attorney General's duties, if any, to disclose evidence in response to a habeas corpus petitioner's *Brady* claim.

We conclude that the Attorney General has both a constitutional and an ethical duty to disclose evidence in response to a petition for writ of habeas corpus alleging a *Brady* violation under certain specified circumstances. In addition, we conclude that the respondent to such a petition has a duty to disclose evidence forming the basis of the *Brady* claim under circumstances that we describe. We explain how these duties may be performed when, as in this case, the evidence forming the basis of the *Brady* claim in a petition for writ of habeas corpus is subject to statutory disclosure restrictions. Finally, we apply these conclusions in Jenkins's case and reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

# I.

## A.

At the time of the incident giving rise to her manslaughter conviction, Jenkins was dating Kayuan Mitchell.[1]  Victim Brittneeh Williams (Brittneeh)[2] and Mitchell had a daughter together.

One evening in January 2018, Mitchell and Brittneeh got into a fight during which Mitchell assaulted Brittneeh.  Jenkins arrived at the scene of the fight and taunted Brittneeh.  Mitchell got into Jenkins's car and Jenkins started to drive away.  After phoning her sister, Sade Williams (Sade), Brittneeh drove after Jenkins and Mitchell.

During the car chase, Jenkins complied with Mitchell's direction to pull into a gas station.  Brittneeh also pulled into the gas station.  Brittneeh came over to Jenkins's car, shouted at Jenkins, and possibly punched her through an open window.  Mitchell got out of Jenkins's car and tried to restrain Brittneeh.

As Mitchell and Brittneeh continued to fight, Jenkins exited her car with a large kitchen knife and became involved in the fight.  Jenkins stabbed Brittneeh three times with the knife, killing her, just as Sade arrived at the scene.  Sade testified that Jenkins stabbed Brittneeh while Mitchell held Brittneeh in a bear hug.

---

[1]    We provide a brief summary of facts leading to Jenkins's conviction based on the Court of Appeal's unpublished opinion in this matter.  (*People v. Jenkins* (Jan. 22, 2021, B294747, B301638) [nonpub. opn.].)

[2]    Because the victim and a witness share the same last name, after introducing them, we use their first names when referring to them individually to avoid confusion.

A jury acquitted Jenkins of murder but convicted her of voluntary manslaughter. The trial court sentenced her to 11 years in prison.

**B.**

Jenkins appealed. While her appeal was pending, Jenkins filed a petition for writ of habeas corpus in the Court of Appeal.

As relevant here, in her petition for writ of habeas corpus, Jenkins claimed that the trial prosecutor suppressed material exculpatory evidence in violation of her right to due process. Specifically, Jenkins alleged the prosecutor failed to disclose that the prosecutor's office had, in 2006, successfully prosecuted Brittneeh and Sade for aggravated assault with hate crime and infliction of great bodily injury enhancements.[3] As to Brittneeh, Jenkins maintained that evidence of Brittneeh's prior commission of violence would have been admissible to demonstrate her character for violence and support Jenkins's claim of self-defense. As to Sade, Jenkins contended that the suppressed evidence would have been admissible for impeachment purposes, both as evidence of prior acts of moral turpitude and as evidence that Sade had lied to the jury when she had testified at Jenkins's trial that Brittneeh had never previously acted like a "bully."

Along with her petition, among other exhibits, Jenkins filed a declaration from her trial counsel supporting her contention that the prosecutor suppressed the evidence. In his declaration, trial counsel stated that Jenkins's postconviction

---

[3] Jenkins noted that the Los Angeles County District Attorney had prosecuted her case as well as the case allegedly involving Brittneeh and Sade.

counsel had recently provided him with a Court of Appeal opinion that "describes how the Williams sisters, both Sade and Brittneeh, brutally attacked three people without provocation, leaving them injured and concussed." Trial counsel stated, "I did not know anything about that case."

Attached to trial counsel's declaration was the Court of Appeal opinion (*People v. Emerald R.* (Mar. 4, 2010, B196643) [nonpub. opn.] (*Emerald R.*)), which had been downloaded from LexisNexis. As discussed in the opinion, in the matter underlying the appeal in *Emerald R.*, a juvenile court declared two minors, referred to as "Brit. W." and "Sade W.," along with several other minors, to be wards of the court. The juvenile court found the minors committed a series of aggravated assaults during an incident that occurred on Halloween night in 2006. Specifically, the juvenile court found that Brit. W. and Sade W. each committed three assaults with force likely to produce great bodily injury and found true hate crime allegations regarding each assault. In addition, the juvenile court found that Brit. W. personally inflicted great bodily injury on two victims and that Sade W. personally inflicted great bodily injury on another victim.

The Court of Appeal ordered Jenkins's petition for writ of habeas corpus to be considered with her appeal, solicited an informal response to the petition, and permitted Jenkins to file a reply to the informal response.

The Attorney General filed an informal response arguing that Jenkins had not stated a prima facie case for relief because she "offered no competent evidence that either [Brittneeh] or [Sade] suffered the adjudications [Jenkins] cite[d], . . . offer[ed] no evidence that the prosecutor failed to disclose them,

and . . . ha[d] not demonstrated how these prior adjudications were material or favorable to her."

In support of the first argument, the Attorney General, citing *People v. Duvall* (1995) 9 Cal.4th 464, 474–475 (*Duvall*), stated in part: "Exhibit B, Attachment B[, the *Emerald R.* opinion,] is nothing but an apparent printout of an unspecified and unverified Internet source suggesting a direct appeal opinion in which minors 'Brit W.' and 'Sade W.' are listed as defendants, among others. Because [Jenkins] has not provided sufficient evidence to show Brittneeh or Sade were the minors named, she has already failed to show a prima facie case for relief."

In her reply to the informal response, Jenkins objected to the Attorney General's refusal to acknowledge whether Brittneeh and Sade were among the wards in *Emerald R.*, stating in part: "[The Attorney General's[4]] approach in this case is deeply concerning — perhaps even more concerning than the prosecutor's failure to disclose this past case, which very well may have been inadvertent. Here, [Jenkins] alleged that the state suppressed evidence of Brittneeh's prior assault. The state now will not say whether or not this is in fact true, but instead plays word games with the Court of Appeal's opinion in that

---

[4] Although Jenkins uses the word "respondent" it is clear here, and in several other places in her briefing below and in this court, that she intended to refer to respondent's counsel, the Attorney General, rather than respondent, the Secretary of the Department of Corrections and Rehabilitation. (See fn. 25, *post*.) We have replaced the word "respondent" with "Attorney General" in those instances in which it is clear Jenkins intended to refer to the Attorney General.

case, characterizing that opinion as 'an apparent printout of an unspecified and unverified Internet source . . . .'

"However, as the chief law enforcement officer of the state, [the Attorney General] has access to Brittneeh's criminal history. (See Pen. Code, § 11105.) Moreover, [the Attorney General's] own office handled the appeal in that case. (See Exh. B, Attachment B, p. 1.) [¶] . . . . [¶]

"If anyone knows whether this case involves Brittneeh Williams — or someone else the same age, from the same county, who is named Brit. W., with a sister named Sade W., who faced the same charges around the same time — it is [the Attorney General]. He should say so."

Jenkins added that any factual dispute as to whether Brittneeh and Sade were, in fact, two of the wards in *Emerald R.* was not a reason to deny the petition for writ of habeas corpus prior to the issuance of an order to show cause. She argued that the Court of Appeal instead "should issue an Order to Show Cause, obtain formal pleadings — where the state can admit or deny in a verified answer whether Brittneeh was or was not the defendant in the prior assault case that [the Attorney General's] own office handled — and order an evidentiary hearing in the unlikely event that a factual dispute remains after respondent answers this allegation under penalty of perjury."

The Court of Appeal issued an order to show cause. The Attorney General filed a two-paragraph return on behalf of respondent that provided in relevant part: "Respondent alleges that [Jenkins] is not entitled to relief because the prosecutor did not violate *Brady* . . . by failing to disclose [Brittneeh's] and [Sade's] purported prior juvenile adjudications for an incident

that occurred in 2006 because [the prosecutor] did not suppress such evidence and such evidence was not material . . . ."

In a brief in support of the return, the Attorney General reiterated Jenkins had not demonstrated that either Brittneeh or Sade "were the minors in [*Emerald R.*]," repeating the argument first provided in the informal response that "Exhibit B, Attachment B is nothing but an apparent printout of an unspecified and unverified Internet source suggesting a direct appeal opinion in which minors 'Brit W.' and 'Sade W.' are listed as defendants, among others." The Attorney General also argued that, even assuming Brittneeh and Sade were among the wards in *Emerald R.*, Jenkins had not "shown that the prosecutor suppressed these prior adjudications." Finally, the Attorney General argued, also in the alternative, that Jenkins had failed to show any of the allegedly suppressed evidence was material.

In her traverse, Jenkins argued respondent had filed a "conclusory general denial" that "plead[ed] no other facts and denie[d] none of the numerous other facts pled in the [p]etition." Jenkins noted that respondent's brief in support of the return made clear that "respondent still questions whether [the *Emerald R.* case] even involved the Williams sisters." Jenkins argued further that the deficient return made it difficult to "isolate any disputed facts which may require an evidentiary hearing." In particular, with respect to the issue of whether Brittneeh and Sade were the wards in the *Emerald R.* case, Jenkins argued that respondent had failed its duty under *Duvall* to either admit or deny the allegations in the petition or to instead allege " '(i) he or she has acted with due diligence; (ii) crucial information is not readily available; and (iii) that there is good reason to dispute certain alleged facts . . . .' "

(Quoting *Duvall*, *supra*, 9 Cal.4th at p. 485.)  Further, to the extent respondent could be understood to deny Jenkins's allegation that Brittneeh and Sade were the wards in the *Emerald R.* case, she requested an evidentiary hearing on this factual dispute.

Along with her traverse, Jenkins filed a brief that argued, "[L]est there be any real question as to whether this case involved someone other than the Williams sisters, petitioner is attaching to this Memorandum . . . a 2007 news article from the Long Beach Press Telegram . . . describing how teenaged 'sisters Brittneeh and Sade Williams . . .' and others were 'convicted of assault' for 'beating three . . . women . . .' on 'Halloween night.' "  Jenkins filed the quoted article as well as the *Emerald R.* opinion, this time downloaded from Westlaw.  The newspaper article states that Brittneeh and Sade Williams were among the minors involved in an incident that appears to form the basis of the offenses described in the *Emerald R.* opinion.

The Court of Appeal affirmed Jenkins's manslaughter conviction and denied her petition for writ of habeas corpus.  Regarding the petition for writ of habeas corpus, the Court of Appeal began its analysis by stating, "In 2006, the Williams sisters, both juveniles, were declared wards of the court due to their having committed three hate-crime assaults with force likely to produce great bodily injury.  [*Emerald R.*, *supra*, B196643.]"  Following this statement, the Court of Appeal included a footnote that provides:  "The juveniles in [*Emerald R.*], are referred to as 'Brit. W.' and 'Sade W.', which [r]espondent contends fails to establish they were the Williams sisters here.  That is a fair point, but for present purposes we will assume Brit. W. and Sade W. were Brittneeh and Sade Williams."

The Court of Appeal explained that Jenkins contended the prosecutor violated her constitutional right to due process pursuant to *Brady* and its progeny by failing to disclose the adjudications before trial. According to the Court of Appeal, Jenkins maintained that had she known about the adjudications, she would have used them to demonstrate that Brittneeh was the aggressor in their fight, and to impeach Sade's credibility.

After assuming that the prosecutor should have disclosed the adjudications and that they would have been admissible at trial, the Court of Appeal concluded that Jenkins's *Brady* claim failed because "there is no reasonable probability that disclosure of the 2006 adjudication[s] would have altered the outcome of trial."

## C.

Jenkins filed a petition for review of the Court of Appeal's denial of the writ petition. The Attorney General filed an answer stating he had no "obligation to provide additional evidence confirming that Brittneeh and Sade had, in fact, suffered the prior juvenile adjudications."

We granted Jenkins's petition for review and limited the issue to be briefed and argued to the following: "Where a habeas petitioner claims not to have received a fair trial because the District Attorney failed to disclose material evidence in violation of *Brady* . . . — and where the Attorney General has knowledge of, or is in actual or constructive possession of, such evidence — what duty, if any, does the Attorney General have to acknowledge or disclose that evidence to the petitioner? Would any such duty be triggered only upon issuance of an order to show cause?"

## II.

Jenkins claims the Attorney General cannot constitutionally or ethically suppress exculpatory evidence relevant to a habeas corpus petitioner's *Brady* claim that the Attorney General knows, or reasonably should know, he possesses. She argues further that the Attorney General must disclose such evidence in his possession upon the filing of a habeas corpus petitioner's verified allegations alleging its existence.

We consider the Attorney General's constitutional duty to disclose alleged *Brady* evidence in habeas corpus proceedings in part II.A., *post*, and his ethical duty to disclose such evidence in part II.B., *post*. In part II.C., *post*, we consider the duties of the respondent to a petition for writ of habeas corpus alleging a *Brady* claim that arise from the procedural law governing such petitions. In part II.D., *post*, we consider how the Attorney General and the respondent may carry out these duties in a case, such as this, in which the alleged *Brady* evidence consists of juvenile records subject to statutory disclosure restrictions. Finally, in part II.E., *post*, we summarize our conclusions and apply them to Jenkins's case.

## A.

Jenkins contends the due process clause of the Fourteenth Amendment to the federal Constitution prohibits the Attorney General from defending a *Brady* claim by "[s]uppressing the [s]ame [e]vidence the [trial] [p]rosecutor [s]uppressed."[5]

---

[5]  Jenkins also contends in summary fashion, "Even [i]f the Attorney General [m]ay [s]uppress [e]vidence under the

"The Fourteenth Amendment to the federal Constitution prohibits states from denying any person due process of law. This guarantee of due process affords criminal defendants the right to a fair trial, 'impos[ing] on States certain duties consistent with their sovereign obligation to ensure "that 'justice shall be done.' " ' " (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 39 (*Deputy Sheriffs*), quoting *Cone v. Bell* (2009) 556 U.S. 449, 451 (*Cone*).)

"Prosecutors, as agents of the sovereign, must honor these obligations." (*Deputy Sheriffs*, *supra*, 8 Cal.5th at p. 39.) " 'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.' " (*People v. Hill* (1998) 17 Cal.4th 800, 820; accord, *Banks v. Dretke* (2004) 540 U.S. 668, 696 (*Banks*) ["We have several times underscored the 'special role played by the American prosecutor in the search for truth in criminal trials' "].)

One special obligation that a prosecutor bears under our system pertains to the disclosure of evidence favorable to a defendant. That duty "trace[s] its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with [the United States Supreme] Court's decision in *Brady . . . .*" (*Kyles v. Whitley* (1995) 514 U.S. 419, 432 (*Kyles*).) "Under *Brady*, *supra*, 373 U.S. 83, and its

[f]ederal Constitution . . . this [c]ourt [s]hould [b]ar [s]uch [c]onduct under the Due Process Clause of the [s]tate Constitution." However, Jenkins fails to develop her state constitutional argument, and we decline to address any such contention here. (See *People v. Guzman* (2019) 8 Cal.5th 673, 683, fn. 7.)

progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence." (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 709 (*Johnson*).) " 'The obligation is not limited to evidence the prosecutor's office itself actually knows of or possesses, but includes "evidence known to the others acting on the government's behalf in the case, including the police." ' " (*People v. Cordova* (2015) 62 Cal.4th 104, 123 (*Cordova*).)

We have not previously had occasion to consider the Attorney General's duty, if any, under *Brady* and its progeny to disclose evidence forming the basis of a habeas corpus petitioner's *Brady* clam. However, numerous courts in other jurisdictions "have held that when state investigators or prosecuting officers know of favorable evidence before or during a defendant's trial, the State's duty to disclose the evidence continues to posttrial proceedings that are determinative of guilt or innocence." (*State v. Harris* (Neb. 2017) 893 N.W.2d 440, 454 (*Harris*); see, e.g., *Whitlock v. Brueggemann* (7th Cir. 2012) 682 F.3d 567, 588 (*Whitlock*) ["As we explained at length before, *Brady* and its progeny impose an obligation on state actors to disclose exculpatory evidence that is discovered before or during trial. See [*Steidl v. Fermon* (7th Cir. 2007)] 494 F.3d [623,] 627–630. This obligation does not cease to exist at the moment of conviction"]; *High v. Head* (11th Cir. 2000) 209 F.3d 1257, 1264, fn. 8 ["The fact that the State had not provided High's trial counsel with the audiotape does not dictate that the State would not have given the audiotape to his first habeas counsel if he had made a specific request for that item. The State's duty to disclose exculpatory material is ongoing"]; *Thomas v. Goldsmith* (9th Cir. 1992) 979 F.2d 746, 749–750 ["We do not refer to the

state's past duty to turn over exculpatory evidence at trial, but to its present duty to turn over exculpatory evidence relevant to the instant habeas corpus proceeding"]; *Blumberg v. Garcia* (C.D.Cal. 2009) 687 F.Supp.2d 1074, 1135 ["The prosecution's duty under *Brady* is a continuing one that extends through habeas proceedings"]; *Canion v. Cole* (Ariz. 2005) 115 P.3d 1261, 1262 [the state has a continuing *Brady* duty to disclose evidence that "comes to its attention" after sentencing]; see also *Runningeagle v. Ryan* (9th Cir. 2012) 686 F.3d 758, 772, fn. 6 [citing *Canion*].)

The Seventh Circuit's decision in *Steidl v. Fermon, supra*, 494 F.3d 623 (*Steidl*) is particularly instructive. In *Steidl*, a former prisoner brought a suit under section 1983 of title 42 of the United States Code against several Illinois state police officials for violating his constitutional rights under *Brady*.[6] (*Steidl*, at p. 625.) The defendants were not involved in Steidl's case prior to his conviction. (*Ibid*.) However, while Steidl's postconviction proceeding was pending, the defendants learned of certain exculpatory evidence that the government had possessed prior to the time of trial. (*Ibid*.) Notwithstanding this knowledge, the defendants failed to disclose the evidence. (*Ibid*.) After his release, Steidl brought a claim in which he contended that the defendants' act in "conceal[ing] exculpatory evidence from the courts during his post-conviction proceedings"

---

[6] Steidl filed suit against several other defendants in addition to the Illinois State Police officials. (See *Steidl, supra*, 494 F.3d at p. 626.) However, these other defendants were not parties to the *Steidl* appeal. (*Ibid*.) Thus, for ease of reference we refer to the Illinois State Police officials as defendants.

deprived him of a fair trial and led to his wrongful conviction. (*Ibid*.)

After the district court denied the defendants' motion to dismiss based on qualified immunity, they filed an interlocutory appeal. (*Steidl, supra*, 494 F.3d at p. 625.) On appeal, the *Steidl* court "agree[d] with the district court that the *Brady* line of cases has clearly established a defendant's right to be informed about exculpatory evidence throughout the proceedings, including appeals and authorized post-conviction procedures, when that exculpatory evidence was known to the state at the time of the original trial." (*Ibid*.) The *Steidl* court reasoned in part: "In our view, *Brady, Ritchie*,[7] and the other cases in this line impose on the state an ongoing duty to disclose exculpatory information if, as *Brady* put it, that evidence is material either to guilt or to punishment and available for the trial. . . . For evidence known to the state at the time of the trial, the duty to disclose extends throughout the legal proceedings that may affect either guilt or punishment, including post-conviction proceedings. Put differently, the taint on the trial that took place continues throughout the proceedings, and thus the duty to disclose and allow correction of that taint continues. We cannot accept the implicit premise of the state's position here, which is that *Brady* leaves state officials free to conceal evidence from reviewing courts or post-conviction courts with impunity, even if that concealment results in the wrongful conviction of an

---

[7]    In *Ritchie*, which we discuss in greater detail in part II.D., *post*, the United States Supreme Court stated that a state's "*duty to disclose* [*under Brady*] *is ongoing*; information that may be deemed immaterial upon original examination may become important as the proceedings progress." (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 60, italics added (*Ritchie*).)

innocent person. It is worth recalling, in this connection, that the *Brady* rule was derived from the Due Process Clause of the Fourteenth Amendment. 'Society wins,' the Court wrote, 'not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.' [*Brady*, *supra*,] 373 U.S. at 87." (*Steidl*, at p. 630.)

We find the *Steidl* court's reasoning persuasive and consistent with the principles underlying *Brady* and its progeny that we outlined *ante*, as well as case law referring to the government's obligations under *Brady* in the postconviction context.

Further, we note that *Steidl* may not be distinguished on the ground that it involved a *police officer's* duty under *Brady*, while, in this case, we consider the duty of the *Attorney General.* As the *Steidl* court explained, it is the *government* who ultimately is obligated to comply with the disclosure requirements imposed by *Brady* and its progeny. (*Steidl*, *supra*, 494 F.3d at pp. 630–631, citing *Youngblood v. West Virginia* (2006) 547 U.S. 867, 869–870; accord, *Johnson*, *supra*, 61 Cal.4th at p. 716 [" 'suppression by the *Government* is a necessary element of a *Brady* claim' " (italics added)]; *People v. Williams* (2013) 58 Cal.4th 197, 256, quoting *Kyles*, *supra*, 514 U.S. at p. 434 [" 'A "reasonable probability" of a different result is accordingly shown when the *government's* evidentiary suppression "undermines confidence in the outcome of the trial" ' " (italics added)].) And, of course, the Attorney General acts on behalf of the government. (See Cal. Const., art. V, § 13 ["the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced"].)

The Attorney General offers several arguments to support the contention that he does not have a duty to disclose evidence under *Brady* in the postconviction context. We consider each in turn. First, the Attorney General argues that "[t]here is no due process requirement that compels the Attorney General to disclose *alleged Brady* evidence at the outset of habeas litigation merely because a habeas petition raises a *Brady* claim." We agree with the Attorney General insofar as he argues that a petitioner's *allegations* of a *Brady* violation do not determine the existence of the Attorney General's *Brady* duties.[8] Where the evidence underlying a *Brady* habeas corpus claim would not have been subject to disclosure by the government prior to conviction — because, for example, such evidence was not favorable to the defendant and material — then the Attorney General has no *Brady* duty to disclose the evidence in postconviction proceedings.

However, just like a prosecutor at trial, it is also true that the *Attorney General's* determination as to whether the evidence is subject to disclosure under *Brady* also is not dispositive as to the existence of a constitutional duty. Therefore, it may be the case that the Attorney General "disclose[s] a favorable piece of evidence" in a case in which it is unclear whether *Brady* mandates disclosure. (*Kyles, supra*, 514 U.S. at p. 439; see *Deputy Sheriffs, supra*, 8 Cal.5th at p. 40.) "This is as it should be." (*Kyles*, at p. 439.) Further, determining whether *Brady*

---

[8]     We note that while a petitioner's allegations are not determinative of the Attorney General's constitutional duty under *Brady*, such allegations do inform a respondent's duties pursuant to our state's habeas corpus procedures in filing a return to a petition for writ of habeas corpus alleging a *Brady* violation. (See part II.C., *post*.)

applies to a piece of evidence may be easier in the postconviction context given that its materiality, or lack thereof, may be more apparent than it is before judgment. (Cf. *Kyles*, at pp. 438–439 [recounting government's argument that materiality is difficult to determine prior to judgment]; *Deputy Sheriffs*, at p. 40 ["it may be difficult to know before judgment what evidence will ultimately prove material"].)

The Attorney General also broadly suggests he has no duty under *Brady* in the postconviction context, even if the evidence at issue *was* favorable to the defendant and material, *was* available at trial, and *was* suppressed. He argues that the purpose of *Brady* is to "safeguard . . . the right to a fair trial," and that "[w]hen a trial is over, *Brady*'s disclosure command lacks purpose and dissipates."

We generally agree with the Attorney General's assessment of *Brady*'s purpose. But we disagree that relieving him of the disclosure requirements of *Brady* — in the context of a habeas corpus proceeding — serves that purpose. To understand why, we review the purpose of our state's habeas corpus proceedings: "The California Constitution has protected the right to seek relief by habeas corpus since our state's founding. [Citations.] Habeas corpus, we have explained, 'often represents a prisoner's last chance to obtain judicial review' of a criminal conviction. [Citation.] The law preserves this avenue to relief in service of principles of substantial justice: ' "Despite the substantive and procedural protections afforded those accused of committing crimes, the basic charters governing our society wisely hold open a final possibility for prisoners to prove their convictions were obtained unjustly." ' " (*In re Friend* (2021) 11 Cal.5th 720, 736 (*Friend*).)

The postconviction *Brady* obligation that we outline today supports the right to a fair trial and is fully compatible with the purpose of habeas corpus proceedings. Under *Brady* and its progeny, securing a conviction by failing to disclose material exculpatory evidence violates due process. (*Brady*, *supra*, 373 U.S. at p. 86; *Johnson*, *supra*, 61 Cal.4th at pp. 709–710.) Imposing a continuing duty of disclosure on the government in this context is consistent with both the due process right on which *Brady* is based, and the "principles of substantial justice" on which our state's long-standing habeas corpus tradition is founded. (*Friend*, *supra*, 11 Cal.5th at p. 736.)

The Attorney General also contends that, "It would be incongruous to graft *Brady*, a trial principle of constitutional criminal procedure, onto a postconviction civil proceeding with its own comprehensive procedural structure." While it is true that "[a] habeas corpus proceeding is not a criminal action" (*Maas v. Superior Court* (2016) 1 Cal.5th 962, 975), and may be characterized as " 'civil in nature' " for some purposes (*Briggs v. Brown* (2017) 3 Cal.5th 808, 838), we have generally refrained from deciding " 'whether a habeas corpus proceeding is civil or criminal,' " noting that " '[i]t is a special proceeding and not entirely analogous to either category.' " (*Id.* at p. 838, fn. 15, quoting *In re Scott* (2003) 29 Cal.4th 783, 815, fn. 6 (*Scott*); see also *Maas*, at p. 975, citing Pen. Code, pt. 2, tit. 12, ch. 1, § 1473 et seq. ["the Legislature likewise . . . labeled the habeas corpus proceeding a 'Special Proceeding [] of a Criminal Nature' "].)[9] In any event, we see nothing incongruous about applying a rule designed to ensure that convictions are premised on due process

---

[9] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

to a procedure designed to " ' "hold open a final possibility for prisoners to prove their convictions were obtained unjustly." ' " (*Friend, supra*, 11 Cal.5th at p. 736.)

Nor does the Attorney General cite any case from this court, or any other, holding that the government, in postconviction proceedings, lacks a duty to disclose *Brady* material that was available to the government at the time of trial. The primary authority the Attorney General relies on, *District Attorney's Office for Third Judicial Dist. v. Osborne* (2009) 557 U.S. 52 (*Osborne*), does not support the Attorney General's position. The defendant in *Osborne* sued Alaska officials in federal court alleging a violation of section 1983 of title 42 of the United States Code based, in part, on his claim that the due process clause gave him the right to access DNA evidence that "had been *unavailable* at trial." (*Osborne*, at p. 61, italics added.) In considering whether the defendant had such a constitutional right "to obtain postconviction access to the State's evidence for DNA testing" (*ibid.*), the *Osborne* court observed that "[t]he availability of technologies *not available at trial* cannot mean that every criminal conviction, or even every criminal conviction involving biological evidence, is suddenly in doubt." (*Id.* at p. 62, italics added.) The *Osborne* court reasoned further that "[t]he dilemma [of] how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice," was a problem to be solved "primarily [by] the legislature." (*Ibid.*)

The *Osborne* court acknowledged that the defendant had "a liberty interest in demonstrating his innocence with new evidence under state law." (*Osborne, supra*, 557 U.S. at p. 68.) After discussing that state law, the *Osborne* court observed that a " 'state-created right can, in some circumstances, beget yet

20

other rights to procedures essential to the realization of the parent right.' " (*Ibid*.) However, the *Osborne* court concluded that the Ninth Circuit "went too far . . . in concluding that the Due Process Clause requires that certain familiar preconviction trial rights be extended to protect Osborne's postconviction liberty interest." (*Ibid*.) The Supreme Court explained that, unlike before trial when a defendant is entitled to the presumption of innocence, "[t]he State . . . has more flexibility in deciding what procedures are needed in the context of postconviction relief. '[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.' [Citation.] Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework." (*Id*. at p. 69.)

While *Osborne* certainly "distinguish[es] between the pretrial and the posttrial obligation to provide exculpatory evidence" (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 906 (*Barnett*)), we do not understand *Osborne* as holding that the government lacks a duty to disclose, in the postconviction context, *Brady* evidence that was *available* prior to conviction. It is notable that *Osborne* repeatedly stated the evidence at issue in that case was *unavailable* at trial (see *Osborne, supra,* 557 U.S. at pp. 61, 62), unlike the present case. And the *Osborne* court's reason for declining to extend *Brady* to evidence discovered in the postconviction context — namely, that the defendant received "a fair trial" (*id*. at pp. 68, 69), also does not apply where the prosecution violates *Brady* at trial. (See, e.g., *Cone, supra,* 556 U.S. at pp. 459, 472 [determining that evidence

that had been "withheld from [the defendant] at trial" "deprived [him] of his right to a fair trial"].)

Other courts have similarly understood *Osborne*. In *Whitlock, supra*, 682 F.3d 567, the Seventh Circuit found no inconsistency between *Osborne* and its earlier conclusion in *Steidl* that a defendant has a " 'right to be informed about exculpatory evidence throughout the proceedings, including appeals and authorized post-conviction procedures, when that exculpatory evidence was known to the state at the time of the original trial.' " (*Id.* at p. 587, quoting *Steidl, supra*, 494 F.3d at p. 625.) The *Whitlock* court explained that the defendant police officials "read *Osborne* too broadly. *Osborne* rejected a claim that Alaska's procedures governing the access of defendants to post-conviction DNA testing violated due process. Critically, the evidence that Osborne sought was not exculpatory evidence that had been in existence at the time of his original trial. Instead, he was seeking the opportunity to collect and submit entirely new, and he hoped exculpatory, evidence. The Court rejected the argument that *Brady* required the state to allow the defendant access to these new tests because the defendant had already been 'proved guilty after a fair trial.' [Citation.] But *Brady* continues to apply to an assertion that one did not receive a fair trial because of the concealment of exculpatory evidence known and in existence at the time of that trial." (*Whitlock*, at pp. 587–588.)

The *Whitlock* court noted further that the *Steidl* court decided only whether the government's *Brady* duty applied to evidence "known and in existence at the time of that trial" (*Whitlock, supra*, 682 F.3d at p. 588), and that it did not decide whether *Brady* applied to " 'evidence discovered post-trial.' " (*Ibid.*, quoting *Steidl, supra*, 494 F.3d at p. 629; see also *Steidl*,

at p. 630 [stating that "available for the trial" "qualification is important, to the extent that *Brady* identifies a trial right"].) Thus, while in *Osborne* the Supreme Court concluded a defendant has no *Brady* "right to have the State disclose exculpatory evidence that it *learns about after a final judgment*" (*Harris*, *supra*, 893 N.W.2d at p. 457, italics added), *Osborne* does not stand for the proposition that the Attorney General may constitutionally continue to suppress material exculpatory evidence in habeas corpus proceedings that was suppressed by a prosecutor at the time of trial. (*Whitlock*, at p. 587; see also *Thompson v. City of Chicago* (7th Cir. 2013) 722 F.3d 963, 972 [following *Whitlock*]; *Collins v. City of New York* (E.D.N.Y. 2013) 923 F.Supp.2d 462, 474 ["In *Osborne*, [*supra*, 557 U.S. at pages 68–69,] the Supreme Court held that *Brady* does not require disclosure of exculpatory evidence — such as DNA testing — that was or could be created after trial. [Citation.] Since Collins's *Brady* claim involves nondisclosure of evidence in existence at the time of trial, *Osborne* does not apply"].) In sum, as was true of the police official defendants in *Whitlock*, we similarly conclude that the Attorney General reads *Osborne* too broadly.

Nor are we persuaded by the Attorney General's argument that "regardless of the applicability of *Brady* postconviction, . . . logic and practicality" dictate that there can be no ongoing *Brady* violation once a petitioner files a petition for writ of habeas corpus claiming a *Brady* violation. As for logic, the Attorney General reasons, "The very allegation that given information was suppressed means that the petitioner is now aware of the evidence, which is no longer suppressed." This contention is unpersuasive because the mere assertion of a *Brady* claim does not always demonstrate the petitioner has

sufficient direct or concrete evidence to support the allegations. Often it is through habeas corpus proceedings, that such evidence is revealed. (See, e.g., *Banks*, *supra*, 540 U.S. at pp. 682, 685 [noting that the petitioner alleged in a habeas corpus proceeding " 'upon information and belief' " that prosecution failed to disclose witness's identity as an informant, and that, several years later, in a habeas corpus evidentiary hearing, a deputy sheriff "acknowledged, for the first time, that [the witness] was an informant"]; *In re Bacigalupo* (2012) 55 Cal.4th 312, 316 [describing reference proceeding that spanned "several hearings over a three-year period," and during which "17 witnesses were called" to determine whether prosecution failed to disclose information it obtained from a confidential informant].) In addition, the mere assertion of a *Brady* claim in a habeas corpus proceeding does not necessarily provide a sufficient evidentiary record for a court to resolve such claim. (See, e.g., *Pham v. Terhune* (9th Cir. 2005) 400 F.3d 740, 743 [ordering discovery of laboratory notes forming the basis of a *Brady* claim and stating "[o]nce [the] notes have been disclosed, the *Brady* issue is for the district court to decide in the first instance"].)

The Attorney General's "practicality" argument is similarly unpersuasive. The fact that, as the Attorney General argues, the petitioner "knows enough to seek [the evidence]" does not provide any assurance that the evidence will be revealed given that, as the Attorney General acknowledges, "a

convicted person enjoys few opportunities to seek postconviction discovery by court order."[10]

In sum, we conclude that where a habeas corpus petitioner claims not to have received a fair trial because a trial prosecutor failed to disclose material evidence in violation of *Brady* — and where the Attorney General has knowledge of, or is in actual or constructive possession of, evidence that the trial prosecutor

---

[10] While section 1054.9 authorizes postconviction discovery in certain cases, the statute does not apply to petitioner given her 11-year sentence. (§ 1054.9, subd. (a) [allowing postconviction discovery in cases involving a criminal conviction of a serious felony or a violent felony resulting in a sentence of *15 years or more*].) Thus, we express no opinion regarding the Attorney General's postconviction statutory discovery duties under section 1054.9 or court-ordered discovery following an order to show cause. (See *Scott, supra,* 29 Cal.4th at p. 813 [after order to show cause issues, the "scope of discovery in habeas corpus proceedings has generally been resolved on a case-by-case basis"].)

We also express no opinion regarding the Attorney General's duty in a hypothetical situation described in his brief, "in which *no* petition for a writ of habeas corpus has been filed alleging a *Brady* violation but the Attorney General becomes aware of evidence that should have been disclosed at trial pursuant to *Brady.*"

suppressed in violation of *Brady*[11] — the Attorney General has a constitutional duty under *Brady* to disclose the evidence.[12]

## B.

Jenkins claims the "[e]thics [r]ules [a]lso [p]rohibit the Attorney General from [s]uppressing [e]vidence."

Rule 3.8 of the Rules of Professional Conduct (Rule 3.8) provides in relevant part: "The prosecutor in a criminal case

---

[11] At oral argument, the Attorney General acknowledged the potential constitutional dimension to his disclosure duties in the habeas corpus context, stating, for example, that "there may well be some due process . . . based obligation to disclose . . . evidence" where a district attorney fails to turn over *Brady* material. The Attorney General also stated, "[W]e are not denying that there may be a constitutional imperative behind this obligation."

However, the Attorney General expressed skepticism as to the applicability of the *Brady* right in the postconviction context because, according to the Attorney General, the postconviction context varies considerably from that which exists prior to conviction. Specifically, the Attorney General argued that while *Brady* obligates the prosecutor to proactively disclose information to further the factfinding function of a trial, "when a habeas claim is filed it is not for the purpose of investigating potential violations." We emphasize the *Brady* duty we recognize in this opinion is limited to circumstances in which the Attorney General has knowledge of, or is in actual or constructive possession of, allegedly suppressed evidence that is referenced in a petition for writ of habeas corpus. Given our disposition remanding the case to the Court of Appeal for further proceedings, we find it unnecessary to consider what circumstances would demonstrate constructive possession in this context.

[12] In part II.D., *post*, we discuss how the Attorney General may comply with his disclosure obligations in a case in which the alleged *Brady* material is subject to confidentiality provisions under Welfare and Institutions Code section 827.

shall: [¶] . . . [¶] (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to negate the guilt of the accused, mitigate the offense, or mitigate the sentence, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."

We have not previously had occasion to consider the Attorney General's ethical duty, if any, pursuant to Rule 3.8(d) in postconviction proceedings generally and thus have not considered his duty as it pertains to a habeas corpus proceeding alleging a *Brady* violation.[13]  The Attorney General argues both that the rule has no application "in any postconviction scenario," and that Rule 3.8(d) should not "be viewed as imposing a duty of disclosure independent of settled habeas procedures . . . ."  We disagree with both contentions.

As to whether Rule 3.8(d) applies in postconviction settings, case law describing a prosecutor's ethical duties in the postconviction context decided before Rule 3.8(d) was adopted supports such application.  Specifically, this court has repeatedly recognized that prosecutors have a continuing duty

---

[13]   "In 2018, [this court] approved a comprehensive revision of the California Rules of Professional Conduct, effective November 1, 2018.  The new rules replace the former rules, and implement a decimal numbering and organizational system based on the American Bar Association Model Rules of Professional Conduct." (*Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 677.)  Rule 3.8 became effective as part of this revision.

This court had previously entered an order enacting a rule of professional conduct, operative November 2, 2017, identical in all material respects to Rule 3.8(d), as an amendment to former rule 5-110 of the Rules of Professional Conduct.

in postconviction proceedings to disclose exculpatory evidence that should have been disclosed at trial. In *People v. Gonzalez* (1990) 51 Cal.3d 1179 (*Gonzalez*), after concluding that a trial court had erred in ordering the Attorney General, among others, to provide certain *discovery* to a defendant in the postconviction setting (see *id.* at pp. 1256–1257), we stated: "Of course, the prosecution has a well-established duty to disclose information materially favorable to the defense, even absent a request therefor. [Citations.] '. . . At trial this duty is enforced by the requirements of due process, but [even] after a conviction the prosecutor . . . is bound by the ethics of his office to inform the appropriate authority of . . . information that casts doubt upon the correctness of the conviction.' [Citation]; see also rule 5-220, Rules Prof. Conduct of State Bar;[14] ABA Model Code Prof. Responsibility, DR 7-103 (B), EC 7-13; ABA Model Rules Prof. Conduct, rule 3.8(d).) [¶] We expect and assume that if the People's lawyers have such information in this or any other case, they will disclose it promptly and fully." (*Id.* at pp. 1260–1261.)

In *In re Steele* (2004) 32 Cal.4th 682, we noted the Attorney General argued that the fact that prosecutors have a continuing ethical duty to disclose exculpatory evidence obviated the need to interpret section 1054.9 as providing for the postconviction discovery of such evidence: "The Attorney General also argues that, as we pointed out in *People v. Gonzalez, supra*, 51 Cal.3d at pages 1260 and 1261, prosecutors have a continuing duty to disclose information favorable to the

---

[14] Former rule 5-220 of the Rules of Professional Conduct provided, "A member shall not suppress any evidence that the member or the member's client has a legal obligation to reveal or to produce."

defense, and we expect and assume that they will perform this duty promptly and fully, and, moreover, that '[i]t is presumed that official duty has been regularly performed.' (Evid. Code, § 664.) Accordingly, he urges, any interpretation of section 1054.9 that extends to discovery the prosecution should have provided at time of trial makes it redundant of other law. However, the expectation and assumption we stated in *Gonzalez* merely mean that normally, and unless the defendant overcomes Evidence Code section 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial." (*In re Steele*, at p. 694.)

Finally, in *In re Lawley* (2008) 42 Cal.4th 1231 (*In re Lawley*), we repeated our admonition from *Gonzalez* concerning the continuing ethical duties of a prosecutor — in the postconviction setting — to disclose evidence that should have been disclosed at trial, this time specifically quoting American Bar Association Model Rules of Professional Conduct, rule 3.8(d) (ABA Model Rule 3.8(d)) as providing, " 'The prosecutor in a criminal case shall: [¶] . . . [¶] (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense.' " (*In re Lawley*, at p. 1246; see *ibid.* ["Before and during trial, due process requires the prosecution to disclose to the defense evidence that is material and exculpatory. [Citations.] This obligation continues after trial." (Citing, inter alia, ABA Model Rule 3.8(d))].)

*Gonzalez*, *In re Steele*, and *In re Lawley* all were decided during a period when California did not have a specific rule of professional conduct mandating that a prosecutor disclose exculpatory evidence. Even *without* a specific rule, this court

repeatedly stated that a prosecutor had an ethical duty to disclose exculpatory evidence in the postconviction setting. Indeed, in both *Gonzalez, supra,* 51 Cal.3d at pages 1260–1261 and *In re Lawley*, *supra,* 42 Cal.4th at page 1246, we relied on ABA Model Rule 3.8(d) in noting the existence of such a duty.

With the adoption of Rule 3.8(d), California now has a specific rule of professional conduct mandating the disclosure of exculpatory evidence by prosecutors. The adoption of a rule of professional conduct that is based in part on ABA Model Rule 3.8(d) — which this court has repeatedly relied on in concluding that prosecutors have a disclosure obligation in the postconviction context — supports our conclusion that Rule 3.8(d) similarly applies in postconviction settings.

The Attorney General argues that the "language [of Rule 3.8(d)] suggests exclusively pretrial application." We are not persuaded. The text of Rule 3.8(d) contains no language expressly limiting its application to proceedings prior to conviction. Nor do we infer any limitation based on the language cited by the Attorney General. The Attorney General notes that Rule 3.8(d) refers to "the accused" (Rule 3.8(d)), a description the Attorney General contends is inapt when referring to a convicted defendant. Similarly, the Attorney General notes that Rule 3.8(d) refers to the "defense," a description that technically does not apply to a petitioner in a habeas corpus proceeding. The Attorney General's textual arguments ascribe too much significance to terms we take to be shorthand references to a person who is, or who has been, the subject of criminal

proceedings and to that person's lawyer(s).[15] (Cf. *People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 573 [rejecting district attorney's argument that "the Legislature's use of the word 'defendant' rather than 'petitioner' in section 1054.9," demonstrated that the Legislature was not "creat[ing] discovery in a separate habeas corpus matter"].) Further, the Attorney General fails to cite any authority attaching import to the use of the terms "accused" or "the defense" in language derived from ABA Model Rule 3.8(d), a provision that we have previously found applicable in postconviction proceedings. (See *In re Lawley*, *supra*, 42 Cal.4th at p. 1246; cf. *Com'n for Lawyer Discipline v. Hanna* (Tex.Ct.App. 2016) 513 S.W.3d 175, 180–181 [stating "we hesitate to hold that the term 'accused' standing alone is conclusive" while discussing Texas Disciplinary Rules of Professional Conduct, rule 3.09(d), which like Rule 3.8(d) "was modeled after [ABA Model] Rule 3.8(d)"].)

We also reject the Attorney General's contention that Rule 3.8(d) should not be interpreted to apply in postconviction proceedings because " 'timely' " disclosure "is no longer possible" in habeas corpus proceedings where guilt has been adjudicated. Timeliness must be measured in relation to the proceeding in which the disclosure is at issue. (See Rule 3.8, com. [3] ["A disclosure's timeliness will vary with the circumstances"].) When applied to postconviction proceedings, Rule 3.8(d)'s requirement that the prosecutor "make timely disclosure" is

---

[15] Although not specifically mentioned by the Attorney General, we have also considered that Rule 3.8 refers generically to a "prosecutor in a criminal case," and does not specifically refer to the Attorney General in habeas corpus proceedings.

reasonably interpreted as mandating timeliness in those proceedings.

Nor are we persuaded by the Attorney General's argument that "the inclusion of rules that expressly *do* apply postconviction" demonstrates that Rule 3.8(d) does *not* apply in this postconviction setting. (Italics added, citing Rule 3.8(f) & (g).)[16] The fact that Rule 3.8(f) and (g) refer to a "convicted" defendant, while Rule 3.8(d) does not use that term, can be explained by the fact that Rule 3.8(f) and (g) apply *exclusively* to convicted defendants, while Rule 3.8(d) *also* applies prior to conviction.[17]

---

[16] Rule 3.8(f) provides: "When a prosecutor knows of new, credible and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall:

"(1) promptly disclose that evidence to an appropriate court or authority, and

"(2) if the conviction was obtained in the prosecutor's jurisdiction,

"(i) promptly disclose that evidence to the defendant unless a court authorizes delay, and

"(ii) undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit."

Rule 3.8(g) provides: "When a prosecutor knows of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall seek to remedy the conviction."

[17] In addition, the paragraph of ABA Model Rule 3.8(d) from which Rule 3.8(d) was drawn was first adopted in 1977 (see *Attorney Grievance v. Cassilly* (Md.Ct.App. 2021) 262 A.3d 272,

Having determined that the Attorney General has an ethical duty pursuant to Rule 3.8(d) in postconviction settings, we consider the Attorney General's argument that Rule 3.8(d) does not establish any additional "duty of disclosure" beyond that provided for by the law governing habeas corpus procedures. The Attorney General's argument is based on comment [3] to Rule 3.8, which provides in part that Rule 3.8(d) should not be "applied in a manner inconsistent with statutory and constitutional provisions governing discovery in California courts." This argument fails because even assuming that respondent's duties that we describe in part II.C., *post*, are *discovery* provisions binding on the Attorney General,[18] the Attorney General has not demonstrated how "imposing a duty of disclosure [pursuant to Rule 3.8(d)] independent of settled habeas procedures establishing a duty on the part of the

---

311), while the paragraphs of the ABA Model Rule 3.8 from which Rule 3.8(f) and (g) were drawn were not adopted until 2008. (See *Cassilly*, at p. 311.) The adoption of these provisions at different times provides a practical explanation for drafting terminology differences. (Cf. *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1093 ["Different bills, drafted by different authors, passed at different times, might well use different language to convey the same basic rule"].)

[18] As a technical matter, the law governing petitions for writ of habeas corpus binds the respondent to such a petition — in this case, the Secretary of the Department of Corrections and Rehabilitation. (See fn. 25, *post*.) Rule 3.8(d) prescribes the ethical duties of respondent's *counsel*, the Attorney General. Further, we are not convinced that the procedural duties we describe in part II.C., *post*, arising from our case law governing petitions for writ of habeas corpus, should be interpreted as "statutory . . . provisions governing discovery" within the meaning of comment [3] to Rule 3.8.

Attorney General to acknowledge and potentially disclose the evidence at issue," is *inconsistent* with those habeas corpus procedures. However, while we reject the Attorney General's argument that comment [3] to Rule 3.8 limits his duty of disclosure to that prescribed in the *procedural law governing habeas corpus proceedings*, we do not suggest that Rule 3.8(d) imposes duties beyond those specified in *statutory and constitutional provisions governing discovery in California courts*.

In fact, we note that the ethical duty in Rule 3.8(d) appears to be similar to the prosecutor's statutory duty at trial to provide discovery of " '[a]ny exculpatory evidence.' " (*Cordova*, *supra*, 62 Cal.4th at p. 124, quoting § 1054.1, subd. (e).)[19] That duty "requires the prosecution to provide all exculpatory evidence, not just evidence that is material under *Brady* and its progeny." (*Cordova*, at p. 124; see also *Barnett*, *supra*, 50 Cal.4th at p. 901 [for purposes of postconviction discovery under § 1054.9, "[i]f petitioner can show he has a reasonable basis for believing a specific item of exculpatory evidence exists, he is entitled to receive that evidence without additionally having to show its materiality"]; accord, *Deputy Sheriffs*, *supra*, 8 Cal.5th at p. 40 [noting that "[s]tatutory and ethical obligations may require even more" than the disclosure of material evidence and citing § 1054.1, subds. (d)–(e) and Rule 3.8(d) & com. [3]].)

---

[19] While it is unnecessary for us to decide whether the two duties are identical, we emphasize that nothing in this opinion should be understood to prescribe a duty of disclosure "inconsistent with statutory and constitutional provisions governing discovery in California courts." (Rule 3.8, com. [3].)

The Attorney General also appears to argue that the applicability of Rule 3.8(d) in habeas corpus proceedings raising a *Brady* claim turns on the Attorney General's assessment of whether the evidence at issue is material to the petitioner's conviction.[20]  We reject any such argument.  Comment [3] to Rule 3.8 expressly states, "The disclosure obligations in paragraph (d) are not limited to evidence or information that is material as defined by *Brady* . . . and its progeny."  This court's approval of Rule 3.8(d) and the accompanying comment makes clear that the ethical disclosure obligation under Rule 3.8(d) is not limited to evidence material to a conviction.

Accordingly, we conclude that, pursuant to Rule 3.8(d), in responding to a petition for writ of habeas corpus alleging a *Brady* violation, the Attorney General has an ethical duty to make timely disclosure to the petitioner of all evidence or information known to the Attorney General that was available but not disclosed at trial[21] that the Attorney General knows or reasonably should know tends to negate the guilt of the petitioner, mitigate the offense, or mitigate the sentence, except when the Attorney General is relieved of this responsibility by a protective order of the tribunal.[22]

---

[20]  In his answering brief, the Attorney General argues, "No ethical rule would have required the Attorney General in this case to disclose records the Attorney General did not consider material to the trial outcome."

[21]  The parties have not briefed, and we do not consider, whether Rule 3.8(d) requires disclosure of evidence that was not available at trial.

[22]  The Attorney General also cites another portion of comment [3] to Rule 3.8, which provides that the rule " 'does not

## C.

In addition to the Attorney General's constitutional and ethical duties described in parts II.A. and II.B., *ante,* a respondent to a petition for writ of habeas corpus alleging a *Brady* claim also has duties that arise from procedural law governing such petitions.

We begin by summarizing well established law governing petitions for writ of habeas corpus. (*Duvall, supra,* 9 Cal.4th at pp. 474–475.) In *Duvall,* we outlined a habeas corpus petitioner's initial pleading burden: "To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and '[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists.' [Citation.] The petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. [Citations.] 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' [Citation.] We presume the regularity of proceedings that resulted in a

---

require disclosure of information protected from disclosure by federal or California laws and rules.' " Thus, the Attorney General argues Rule 3.8(d) would not compel disclosure of the evidence at issue in this case because it consists of confidential juvenile court records protected from dissemination pursuant to Welfare and Institutions Code section 827. We discuss in part II.D., *post,* how the Attorney General may comply with his ethical duty of disclosure in cases involving records subject to Welfare and Institutions Code section 827.

final judgment [citation], and . . . the burden is on the petitioner to establish grounds for his release." (*Id*. at p. 474.)

"An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief." (*Duvall*, *supra*, 9 Cal.4th at pp. 474–475.) The court may request that the respondent provide an "informal written response." (Cal. Rules of Court, rule 8.385(b)(1); see also *id*., rules 4.551(b) ["informal response" in noncapital habeas corpus proceedings in superior court], 4.573(a) ["informal written response" in capital habeas corpus proceedings in superior court].)

In *People v. Romero* (1994) 8 Cal.4th 728, 742 (*Romero*) we described the "screening function" that an informal response serves in resolving petitions for writ of habeas corpus: "Through the informal response, the custodian or real party in interest may demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily, without requiring formal pleadings (the return and traverse) or conducting an evidentiary hearing. If the petitioner successfully controverts the factual materials submitted with the informal response,[23] or if for any other reason the informal response does not persuade the court that the petition's claims are lacking in merit, then the court must proceed to the next stage by issuing an order to show cause or the now rarely used writ of habeas corpus. Deficiencies in the

---

[23] The *Romero* court noted that a petitioner is afforded an opportunity to file a reply to any informal response. (*Romero*, *supra*, 8 Cal.4th at p. 741; see Cal. Rules of Court, rules 8.385(b)(3), 4.551(b)(2), 4.573(a)(3).)

informal response do not provide a justification for shortcutting this procedural step." (*Ibid.*, fn. omitted.)

Upon the issuance of the order to show cause, the respondent files a return. (*Duvall, supra,* 9 Cal.4th at p. 475.) In the return, the respondent is required to " 'allege *facts* tending to establish the legality of petitioner's detention.' " (*Id.* at p. 476.) "Those facts are not simply the existence of a judgment of conviction and sentence when the petitioner challenges his restraint in prison. The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. [Citations.] In addition to stating facts, the return should also, 'where appropriate, . . . provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.' " (*Ibid.*, fn. omitted.) Following the filing of the return, the petitioner may file a pleading called a traverse that responds to the facts pleaded in the return. (*Ibid.*)

In *Duvall*, we emphasized that the "requirement that the return allege facts responsive to the petition is critical, for the factual allegations in the return are either admitted or disputed in the traverse and this interplay frames the factual issues that the court must decide." (*Duvall, supra,* 9 Cal.4th at p. 477.) Further, we specifically "reiterate[d] our disapproval of the practice of filing returns that merely contain a general denial of a habeas corpus petitioner's factual allegations." (*Id.* at pp. 480–481.) However, the *Duvall* court outlined the procedures to follow when a respondent does not have access to information needed to either admit or deny a factual allegation of the petition. In such circumstances, the "return should set forth with specificity: (i) why information is not readily

available; (ii) the steps that were taken to try to obtain it; and (iii) why [respondent] believes in good faith that certain alleged facts are untrue." (*Id.* at p. 485.)

With these procedures in mind, we consider a respondent's duty in responding to a habeas corpus petitioner's *Brady* claim in a case in which the respondent has knowledge of, or is in actual or constructive possession of, the evidence forming the basis of the claim. As alluded to above, we reiterate that upon the filing of a petition alleging a *Brady* violation, if the allegedly suppressed evidence *is* material and exculpatory, the Attorney General has an independent constitutional duty to disclose the evidence (see pt. II.A., *ante*), and to the extent the evidence *is* subject to Rule 3.8(d), the Attorney General has an independent ethical duty to disclose the evidence (see pt. II.B., *ante*).[24] In this part we consider *additional* duties arising from habeas corpus procedural law that apply upon the mere *allegation* of a *Brady* violation. Specifically, we consider respondent's duty in filing an informal response prior to the issuance of an order to show cause, and respondent's duty in filing a return should a court issue an order to show cause.

---

[24] In addition, even where disclosure is *not* mandated by *Brady* or Rule 3.8(d), the Attorney General may disclose the evidence to promote justice as a policy matter. Further, the Attorney General's disclosure of allegedly suppressed evidence in response to a petition for writ of habeas corpus alleging a *Brady* violation is not necessarily an admission or concession on the merits because, as noted in part II.A., *ante*, the Attorney General may disclose the evidence in an attempt to comply with his *Brady* duty even where a court ultimately concludes that *Brady* did not mandate disclosure. (*Kyles, supra*, 514 U.S. at p. 439; *Deputy Sheriffs, supra*, 8 Cal.5th at p. 40.)

Jenkins contends the "Attorney General[25] should not be permitted to sit on exculpatory evidence undermining a criminal defendant's conviction and hope that the case does not survive the informal briefing stage." She supports her argument by noting "the vast number of unrepresented habeas petitioners," and argues that a contrary rule would "incentivize continued suppression." She argues that the mere filing of a petition for writ of habeas corpus alleging a *Brady* claim requires the Attorney General to disclose the allegedly exculpatory evidence.

We reject this argument. To begin with, a petitioner's filing of a petition for writ of habeas corpus *alleging* a *Brady* claim, does not establish the *existence* of any exculpatory evidence. Thus, the analysis depends on whether the mere *allegation* of a *Brady* violation in a petition for writ of habeas corpus triggers a respondent's duty under our habeas corpus case law to disclose the existence of known evidence underlying such claim.[26]

The informal response is a judicially created procedure. (See *Romero, supra,* 8 Cal.4th at pp. 741–742 [outlining history

---

**25**     While our order limiting the issue to be briefed and argued suggested that this duty was the Attorney General's, as a technical matter, the duty belongs to the Attorney General's client, respondent Secretary of the Department of Corrections and Rehabilitation. (See § 1477 [stating that a writ of habeas corpus "must be directed to the person having custody of or restraining the person on whose behalf the application is made"].) However, the Attorney General must also comply with the habeas corpus procedural duties specified in this opinion when acting on behalf of respondent as counsel.

**26**     Again, the fact that respondent has knowledge, whether actual or constructive, of the evidence does not establish that the evidence is material or exculpatory.

of the development of the use of informal responses in habeas corpus proceedings].) We are not aware of any case law, and Jenkins cites none, holding that a respondent must come forward with affirmative evidence of any kind in an informal response. (See *In re Robbins* (1998) 18 Cal.4th 770, 798, fn. 20 ["Nothing in . . . *Duvall*, *supra*, 9 Cal.4th 464, [476], suggests, much less holds, that respondent is obligated to provide . . . documentary evidence in an informal response," that will " ' "enable the court to determine which issues are truly disputed" ' "].) Nor do the relevant rules of court that now govern informal responses in habeas corpus proceedings specify any such duty. (See Cal. Rules of Court, rules 8.385(b), 4.551(b), 4.573(a).) Further, the "screening function" (*Romero*, at p. 742) that an informal response serves — allowing for the identification of facially deficient petitions — does not support imposing such a duty.

Therefore, we agree with the Attorney General that, *prior* to the issuance of an order to show cause, in an informal response, respondent may choose to neither "confirm nor dispute" the existence of the alleged *Brady* evidence and may argue instead that, assuming the existence of the evidence, the evidence is not subject to *Brady*.[27] Permitting respondent to

---

[27] Again, we emphasize that we are discussing here only the respondent's duties under the law governing habeas corpus petitions in responding to an *allegation* of a *Brady* violation. If the allegedly suppressed evidence is *in fact* subject to *Brady* and/or Rule 3.8(d), the Attorney General has a duty to disclose the evidence as outlined in part II.A. and/or part II.B., *ante*, respectively.

argue in such a fashion should not prejudice a habeas corpus petitioner who merely carries a pleading burden prior to the issuance of an order to show cause. (See *Duvall*, *supra*, 9 Cal.4th at p. 474 [specifying a habeas corpus petitioner's pleading burden].)

However, given that a court is empowered, after allowing a petitioner to file a reply to the informal response (see *Romero*, *supra*, 8 Cal.4th at p. 741) to summarily reject a petition for habeas corpus on the basis of "*factual materials*" submitted in an informal response (*id*. at p. 742, italics added), we do impose one restriction on a respondent's informal response. Specifically, we conclude that, if the Attorney General has knowledge of, or is in actual or constructive possession of, evidence underlying a habeas corpus petitioner's *Brady* claim, he shall not file an informal response on behalf of respondent that argues the petitioner has failed to present "documentary evidence supporting the claim" (*Duvall*, *supra*, 9 Cal.4th at p. 474), unless the Attorney General explains the basis for such an argument (e.g., by explaining that confidentiality provisions prohibit the Attorney General from confirming the existence of the evidence and the petitioner has failed to utilize available procedures to seek access to the evidence).[28]  This limited

_____

In addition, if the evidence does *not* in fact exist, contrary to our hypothetical positing that the Attorney General has knowledge of its existence, respondent may argue that the evidence does not exist.

[28]    In discussing his responsibilities in filing an informal response responding to a habeas corpus petitioner's *Brady* claim, the Attorney General proposes a similar restriction, stating, "[W]hen the Attorney General has ready access to

restriction is sufficient to guard against the possibility that a court would summarily reject a petition on the erroneous premise that the evidence does not exist, when in fact the Attorney General has knowledge of the existence of the evidence.

However, *after* the issuance of an order to show cause, different rules apply. As we outlined *ante*, *Duvall* requires a respondent to plead facts responsive to the petitioner's allegations, including " 'where appropriate, . . . provid[ing] such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.' " (*Duvall*, *supra*, 9 Cal.4th at p. 476.) Thus, as the Attorney General acknowledges, "This obligation to allege facts would ordinarily include acknowledging the existence of alleged *Brady* evidence known to or possessed by the Attorney General." We agree.

Thus, for example, if a habeas corpus petitioner alleged that a prosecution witness had a prior conviction that was suppressed at trial under *Brady*, after the issuance of an order to show cause, the Attorney General, on behalf of respondent, would normally be required to file a return that either admitted or denied the *existence* of the prior conviction.[29] By either

_____

information that would confirm or dispel the accuracy of petitioner's factual claims, the Attorney General should not contest the sufficiency of evidence provided by petitioner without providing factual clarification — or identifying a statutory inability to do so."

[29] In this hypothetical scenario, the Attorney General would have knowledge of such evidence given his role in administering the state's depository of criminal history records. (Cf. § 11105,

admitting or denying the *factual* basis of the habeas corpus petitioner's *Brady* claim, respondent would thereby "sharpen[] the issues" that remain to be decided in any evidentiary hearing.[30] (*Duvall, supra,* 9 Cal.4th at p. 480.)

Accordingly, we conclude that *prior* to the issuance of an order to show cause on a petition for writ of habeas corpus raising a *Brady* claim, the Attorney General generally may file an informal response on behalf of a respondent that neither confirms nor disputes the existence of the alleged *Brady* evidence. However, the Attorney General shall not file an informal response contending that the petitioner has failed to demonstrate the existence of the evidence where the Attorney General has knowledge of, or is in actual or constructive possession of, the evidence, without providing a reasoned explanation rooted in the Attorney General's inability to confirm the existence of the evidence and petitioner's failure to utilize procedures for obtaining the evidence. Further, at the *return* stage, the Attorney General, on behalf of the respondent, shall not persist in raising any argument put forth in an informal response that the petitioner failed to carry his or her burden of showing the evidence exists without providing a reason for why respondent is unable to confirm or deny the existence of the

---

subd. (a)(2)(A) [" 'State summary criminal history information' means the master record of information compiled by the Attorney General pertaining to the identification and criminal history of a person"].)

[30]   At the return stage, the respondent remains free to present whatever legal arguments he or she deems appropriate in responding to the petitioner's claim. Thus, with respect to a *Brady* claim, the respondent might argue that the evidence is not material.

evidence (e.g., because the alleged evidence is subject to disclosure prohibitions).[31]

## D.

In his answering brief in this court, the Attorney General points out that the evidence underlying Jenkins's *Brady* claim, namely the juvenile adjudications that Brittneeh and Sade allegedly suffered, are subject to disclosure restrictions contained in Welfare and Institutions Code section 827.[32] In considering the relevance of this fact to the duties discussed in this opinion, we first outline the existing law governing the government's *Brady* obligation in the context of confidential records protected by Welfare and Institutions Code section 827. We then discuss how this law applies with respect to the constitutional, ethical, and habeas corpus procedural duties outlined in parts II.A., II.B., and II.C., *ante*, respectively.[33]

---

[31] As previously noted, we discuss in part II.D., *post*, how the respondent may carry its *Duvall* pleading duty when a statute, such as Welfare and Institutions Code section 827, restricts the disclosure of the evidence underlying the respondent's pleading burden.

[32] Neither party referred to these disclosure restrictions in the proceedings in the Court of Appeal or at the petition stage in this court. In her reply brief, Jenkins does not dispute that Welfare and Institutions Code section 827 restricts the disclosure of the alleged adjudications.

[33] Apart from Welfare and Institutions Code section 827, we express no opinion as to whether and how other disclosure restrictions might apply with respect to the evidence underlying a *Brady* claim in a petition for writ of habeas corpus and how such restrictions might affect the duties we have outlined in parts II.A., II.B., and II.C., *ante*.

Welfare and Institutions Code section 827 has long since "repose[d] in the juvenile court control of juvenile records." (*T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 780.) The statute "requires the permission of the court before any information about juveniles is disclosed to third parties by any law enforcement official." (*Ibid*.) In *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329 (*J.E.*), the Court of Appeal provided an overview of Welfare and Institutions Code section 827's confidentiality provisions and the petition procedure that may be used by those not specifically statutorily authorized to inspect such records to gain access to them, including criminal defendants such as Jenkins: "Section 827 specifies who is authorized to inspect the files, and it lists the prosecutor as one of the authorized persons. An authorized person, in turn, may not disclose information from the files to an unauthorized person without a court order. . . . [¶] Section 827 also contains provisions that permit unauthorized persons to directly petition the juvenile court for access to the confidential records. [Citations.] Under section 827 the juvenile court has 'exclusive authority to determine whether and to what extent to grant access to confidential juvenile records' to unauthorized persons. [Citation.] This statutory scheme reflects a legislative determination that the juvenile court has 'both the " 'sensitivity and expertise' to make decisions about access to juvenile records." ' " (*J.E.*, at p. 1337, fns. omitted.)

The *J.E.* court also summarized the in camera review procedures specified by Welfare and Institutions Code section 827 and California Rules of Court, rule 5.552 that govern a petition for disclosure of confidential juvenile documents. (*J.E.*, *supra*, 223 Cal.App.4th at p. 1338.) The *J.E.* court concluded that these in camera review procedures provide the

"proper mechanism to resolve a defense *Brady* disclosure request involving information in a juvenile file." (*Ibid*.)

In reaching this conclusion, the *J.E.* court noted that although the "government's *Brady* obligations are typically placed upon the *prosecutor*, the courts have recognized that the *Brady* requirements can also be satisfied when a *trial court* conducts an in camera review of documents containing possible exculpatory or impeachment evidence." (*J.E.*, *supra*, 223 Cal.App.4th at p. 1336, citing, inter alia, *Ritchie*, *supra*, 480 U.S. at pp. 57–58.) The *J.E.* court noted that, in *Ritchie*, the United States Supreme Court held that a defendant's right to a fair trial was sufficiently protected by a trial court's in camera review of confidential child protection agency files that the defendant sought. (*J.E.*, at p. 1336, citing *Ritchie*, at pp. 59–61.) The *Ritchie* court stated that the trial court was required to disclose the material to the defense if it were to determine the confidential files contained *Brady* material. (*Ritchie*, at pp. 60–61.)

The *J.E.* court explained that Welfare and Institutions Code section 827 codified a similar procedure for in camera review, and possible disclosure, of juvenile records that "has long been recognized as an appropriate vehicle to protect both the defendant's right to a fair trial and the state's interest in confidentiality of the files." (*J.E.*, *supra*, 223 Cal.App.4th at p. 1338, citing, inter alia, *People v. Martinez* (2009) 47 Cal.4th 399, 450–454.) And, as we described in *Johnson*, "The *J.E.* court explained that, '[a]s a practical matter, use of a [Welfare and Institutions Code] section 827 petition to secure *Brady* review can also serve to streamline the review process. A section 827 petition filed directly with the juvenile court bypasses the prosecutor as an intermediary and allows the court to make the

disclosure decision in the first instance. This eliminates the need for the prosecution to request court permission for disclosure after its *Brady* review, and forestalls litigation brought by the defense over whether the prosecution has complied with its *Brady* obligations. Given that the Legislature has established the section 827 court petition process for access to juvenile files, it makes practical sense to allow use of this process to resolve *Brady* requests through a single procedure.' ([*J.E.*], *supra*, 223 Cal.App.4th at p. 1339.)" (*Johnson, supra*, 61 Cal.4th at p. 718.) Accordingly, in *Johnson*, we cited *Ritchie* and *J.E.*, as providing the "procedure used for confidential juvenile records." (*Ibid.*)

Finally, in *People v. Stewart* (2020) 55 Cal.App.5th 755 (*Stewart*), the Court of Appeal concluded that the People had violated their duty under *Brady* and its progeny in connection with a police report that was protected from disclosure by Welfare and Institutions Code section 827. The alleged victim of the offenses discussed in the police report, which pertained to an incident separate from the charged offenses, was a minor and a key prosecution witness in the defendant's case. (*Stewart*, at pp. 761, 776.) After discussing *Ritchie, J.E.*, and *Johnson* — "three cases that bear on a prosecutor's *Brady* obligation in the context of confidential records" (*Stewart*, at p. 771) — the *Stewart* court concluded that the government had suppressed the police report, which contained potentially impeaching information as to the alleged victim/witness. (*Id.* at pp. 775–776.) The *Stewart* court reasoned that the People could have satisfied their *Brady* obligation under such case law by "informing the defense of the existence of potential impeachment material in the police report, making a copy of the [police report] available for the juvenile court's review, and

referring [the defendant] to the section 827 procedure to obtain it," but had failed to do so. (*Id.* at p. 775.)

This case law informs our assessment of the Attorney General's duty in responding to a petition for writ of habeas corpus alleging a *Brady* violation from the failure to disclose evidence in a case in which the Attorney General is himself prohibited from disclosing the evidence pursuant to Welfare and Institutions Code section 827. Applying such law, we conclude that the Attorney General may satisfy his *Brady* duty under such circumstances by: (1) informing the petitioner or petitioner's counsel that the materials allegedly suppressed are protected by Welfare and Institutions Code section 827; (2) informing the petitioner or petitioner's counsel of the Welfare and Institutions Code section 827 procedure needed to obtain such evidence; and (3) after the petitioner files a Welfare and Institutions Code section 827 petition, making any such evidence that the Attorney General possesses available for a juvenile court's review under that statute. (See *Stewart*, *supra*, 55 Cal.App.5th at p. 775 [outlining prosecutor's duty with respect to such evidence prior to conviction].)

Similarly, with respect to his ethical duty under Rule 3.8(d) under these circumstances, while the Attorney General properly notes that comment [3] to Rule 3.8 specifies that it "does not require disclosure of information protected from disclosure by federal or California laws and rules," as discussed in the previous paragraph, the Attorney General need not *disclose* confidential materials. Rather, we conclude that the Attorney General may comply with his Rule 3.8(d) duty in the same manner as he may comply with his *Brady* duty with respect to confidential materials. (Cf. *Stewart*, *supra*, 55 Cal.App.5th at p. 775.)

Finally, with respect to a respondent's duty in filing a return under these circumstances, we conclude that a respondent may plead an inability to plead facts about the alleged *Brady* evidence due to the Welfare and Institutions Code section 827 disclosure bar. Permitting a respondent to file such a pleading would be consistent with our discussion in *Duvall* of pleading rules to be applied "where access to critical information is limited or denied to one party." (*Duvall, supra,* 9 Cal.4th at p. 485.) Such a pleading would also be consistent with the requirement in *Duvall* that the "return should set forth with specificity . . . why information is not readily available." (*Ibid.*) The Attorney General should also state in respondent's return that the petitioner or petitioner's counsel may utilize the procedure specified in that statute to attempt to obtain such evidence and make any such evidence he possesses available for a juvenile court's review under Welfare and Institutions Code section 827. By filing such a return, respondent also will serve the salutary purpose of alerting the habeas corpus court of the possible need for ancillary proceedings in the juvenile court before the habeas corpus court can "endeavor to determine whether there are facts legitimately in dispute that may require holding an evidentiary hearing." (*Duvall*, at p. 485.)

In sum, in responding to a petition for writ of habeas corpus alleging a *Brady* violation based on a failure to disclose evidence when the Attorney General is himself prohibited from disclosing that evidence pursuant to Welfare and Institutions Code section 827, the Attorney General need not, and should not, himself disclose the evidence in contravention of statutory confidentiality procedures. However, the existence of such confidentiality provisions does not relieve the Attorney General of the various disclosure duties outlined in this opinion. Instead,

when faced with such a petition, the Attorney General should proceed as outlined in this part and, in so doing, will comply with the duties we have described in this opinion without contravening the disclosure restrictions contained in Welfare and Institutions Code section 827.

### E.

To recap, where allegedly suppressed evidence forming the basis of a *Brady* claim in a petition for writ of habeas corpus is in fact subject to *Brady*, the Attorney General has a constitutional duty of disclosure that exists as of the time of the filing of the petition as outlined in part II.A., *ante*.[34] Where such evidence is *not* subject to *Brady*, but is subject to Rule 3.8(d), the Attorney General has an ethical duty of disclosure that exists as of the time of the filing of the petition as outlined in part II.B., *ante*. Where such evidence is neither subject to *Brady* nor subject to disclosure under Rule 3.8(d), respondent has a duty to disclose the existence of the evidence under *Duvall* that arises

---

[34] The Attorney General states in his brief that in cases in which the material underlying a *Brady* petition for writ of habeas corpus is in fact *Brady* material, as a "policy decision," he will either: (1) provide the material directly to the petitioner, or (2) if the evidence is subject to disclosure restrictions, provide the petitioner with notice sufficient to permit the petitioner to seek court-ordered disclosure. We emphasize that the Attorney General has a legal duty mandated by *Brady* and its progeny to disclose such evidence. In addition, because evidence that is in fact *Brady* material will also, by definition, be subject to Rule 3.8(d), the Attorney General also has an ethical duty to disclose such evidence. In addition, as noted in the text, in a case in which the evidence is subject to disclosure restrictions contained in Welfare and Institutions Code section 827, the Attorney General may satisfy those duties by proceeding as outlined in part II.D., *ante*.

after the issuance of an order to show cause as outlined in part III.C., *ante.* Finally, where such evidence is subject to disclosure restrictions contained in Welfare and Institutions Code section 827, the Attorney General and the respondent may fulfill their duties by proceeding as outlined in part II.D., *ante.*

We emphasize that where the evidence at issue is *actually Brady* material and/or subject to Rule 3.8(d), the Attorney General's constitutional and ethical obligations exist independently from respondent's duty under habeas corpus case law to respond to a petitioner's *Brady* claim. Thus, when triggered, such duties exist as of the filing of the petition. In addition, the respondent has procedural duties that arise from a petitioner's *allegation* that are triggered upon the issuance of an order to show cause.

In light of the Attorney General's admittedly deficient litigation practices in the Court of Appeal,[35] as well as our clarification of the Attorney General's disclosure duties, it is appropriate to remand the matter to the Court of Appeal for

---

[35] In his merits brief in this court, the Attorney General acknowledged that his return in the Court of Appeal was "deficient . . . because it . . . argued (in part) that petitioner had not provided sufficient proof of the alleged juvenile adjudications, yet did not provide clarifying materials or plead an inability to do so." In addition, in that brief, the Attorney General stated that his informal response in the Court of Appeal "did not represent best practices" for similar reasons. At oral argument in this court, the Attorney General stated, "We did not fulfill our duty to assist the habeas tribunal to understand what facts were actually at issue in this case." While we appreciate the Attorney General's eventual concessions, we emphasize that we do not condone such errors and that a prudent prosecutor should take care to not make these mistakes in the future.

further proceedings so as to permit that court to consider Jenkins's petition upon a fulsome record prepared in accordance with the principles that we have outlined in this opinion. In remanding, we express no opinion on the merits of Jenkins's petition for writ of habeas corpus.

Finally, we urge the prosecutors in this case, and in every other, to carefully consider the constitutional, ethical, and habeas corpus procedural duties that we have outlined herein to ensure that they faithfully bear the special responsibilities ascribed to the prosecution in our system of justice. We remind the prosecutors of today of what we said in *In re Ferguson* (1971) 5 Cal.3d 525: "The search for truth is not served but hindered by the concealment of relevant and material evidence. Although our system of administering criminal justice is adversary in nature, a trial is not a game. Its ultimate goal is the ascertainment of truth, and where furtherance of the adversary system comes in conflict with the ultimate goal, the adversary system must give way to reasonable restraints designed to further that goal. Implementation of this policy requires recognition of a duty on the part of the prosecution to disclose evidence to the defense in appropriate cases." (*Id.* at pp. 531–532.)

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Jenkins

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 1/22/21 – 2d Dist., Div. 1
**Rehearing Granted**

_____

**Opinion No.** S267391
**Date Filed:** March 27, 2023

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Lisa B. Lench

_____

**Counsel:**

Rudolph J. Alejo, under appointment by the Supreme Court, for Petitioner Jasmine Jenkins.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey and Jeffrey M. Laurence, Assistant Attorneys General, Zee Rodriguez, Paul Thies, Seth K. Schalit and J. Michael Chamberlain, Deputy Attorneys General, for Respondent Department of Corrections and Rehabilitation.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rudolph J. Alejo
Attorney at Law
520 South Grand Avenue, 4th Floor
Los Angeles, CA 90071
(213) 243-0300

J. Michael Chamberlain
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3775